And the court will proceed to the third case, United States v. White. Good morning. May it please the court, my name is Daniel Hillis, I'm with the Federal Public Defender's Office, and I represent Mr. White on this appeal. On it, he challenges the sufficiency of the evidence for the issuance of the search warrant as well as the Franks issue that we've covered in our brief. When considering whether to issue a warrant, the court consider a district judge or the magistrate, or in this case, the state court judge, considers various factors that determine whether or not there's sufficient evidence to establish probable cause. One of those factors is whether an individual appears personally in front of the judge to testify, and here, the individual did. But there was not meaningful testimony. She asked him his name and he said it. Didn't do anything to establish his basis of knowledge, his credibility, anything that goes into the reliability of the individual who provides the information. Furthermore, while he claimed to have firsthand knowledge of the gun, it was extremely limited, and in fact, he claimed that it was a particular type of gun, a .45, when ultimately it was a 9mm of difference in color, I believe was an issue as well. His firsthand knowledge was extremely limited. His testimony before the issuing judge, the state court judge, was limited as much as I've ever seen. Just asking somebody their name is inadequate. The individual who gave the information to the judge, the confidential informant, didn't know the address of the house, had no history of giving reliable information and tips to the police department, made a peculiar claim that Mr. White retrieved the gun from the basement closet every time the informant visited the house. Mr. White, he said, kept the gun for security reasons, and when the informant said that he visited the house recreationally, we have a disconnect between what he said Mr. White kept the gun for and where he kept it, versus why he would retrieve it all the time on recreational visits to a friend's house, essentially. The story didn't really make much sense. And, of course, it's an issue about the amount of time between the tip that's given and the seeking of the application. And there was a question of whether it was ten days or two months from the last time the individual had seen the gun. Guns are portable. They're easily moved. Especially if the person is keeping a gun for personal security, there's not necessarily a reason to think that the gun would be left in the house, especially for this period of time. As for the house, there was no independent effort by the police to surveil the residents and determine that Mr. White, in fact, lived in this place where this individual, the informant, said he lived. Again, the informant didn't even know the address of this house. Well, he knew where it was, though. He knew where it was. The police took him there. But, again, it's peculiar if you say that you've been to the house to know so little about it, even the street address. It would be a basic thing. Somebody would be expected to know if they were, in fact, reliable and credible. And this individual didn't even know that. Simple detail. He knew things like it had a basement, it had a door. How many houses have basements and have doors? It seems to me that there are a lot of them. It doesn't give us much about the peculiarities of the particular place where the gun is said to have been stored. The police could have surveilled the house and determined who lived there. That would have been a basic thing. They could have asked a neighbor or somebody to confirm that this was, in fact, where Mr. White lived. Those things didn't happen either. So, in our view, there was not sufficient evidence to establish probable cause. And that should have been assessed by the district court. So far as the government says that probable cause wasn't really raised, the government says on page 16 through 18 of its brief, I think in particular on page 18, that probable cause was generally raised. Well, that preserves the issue on the appeal. The district court should have made a probable cause determination. But now I want to get to the heart of the matter, and that is the Franks violation. In this case, there was clearly a Franks violation. The officer in the case, the affiant, omitted material information. He omitted the fact that the confidential source had been recently arrested. Take that back. I believe he said he had been recently arrested. He omitted the criminal history entirely. This is a confidential informant who used an alias on five or six occasions. Couldn't even be truthful about his own name. Didn't say anything about how the individual's recent case, the severity of it, that the confidential source in this case was attempting to catch a break in his own case. So he had skin in the game trying to curry favor with the government, with the prosecutor, in order to benefit himself. He had reason and motive to cause some suspicion about the story. Those things should have required examination by a judge had they known them. The fact that the police officer omitted that information from his affidavit, which then went up for review to the state's attorney's office, that is essential information under this court's decision in Glover, which, of course, cites Brady. That is information that would have steered this case in a potentially different direction, and I think in an absolutely different direction, given the limitations on the quality and quantity of evidence that was there for probable cause. If everything is based on the reliability of the informant, and then you find out the informant has a criminal record, that the informant is trying to give something up in order to get something in return, and those facts aren't disclosed to the judge, that shows a deliberate omission or reckless omission of material information. And that's the first prong of Frank's. That's a violation of that factor. Would the warrant have been issued? I don't think so. We know that an individual is unreliable because of their criminal history and so forth. Then disclosing that information would have resulted in a different conclusion in this case. And with respect to whether or not it was reckless or deliberate, obviously they knew that this individual was not a mere citizen of Chicago. He was a multiply convicted felon who had reason to give information that should cause some suspicion about the basis of his stepping forward and giving the information. We think that all three prongs of Frank's were established, and then I would like to comment on this. So far as the district court said and gave any deference to the state court judge who testified in the Frank's proceedings, the district court gave deference to the testimony of the state court judge. That is a witness like the police officer or any other. That is not entitled to any deference. It is a de novo review that the district court should have performed. It is no discretion to be given to the testimony of that individual. It's not dispositive in any regard. It is de novo review, much like this court will conduct now. And procedurally there was a defect in the proceedings by giving that sort of deference to the testimony of the judge who was a witness there like any other. And given all of the irregularities in her own practice as she described for what she requires for an individual, I think her testimony deserved less deference than most. She didn't follow her own procedures in determining the reliability of the confidential source. Silas, didn't she say it's her general practice to look at the file? Yes. And didn't the file contain the criminal history? I'm not certain that it did, Judge. I mean, I ticked off in my brief that we don't have any materials from her file to support that. Her general practice was to do lots of things, including questioning the witness. She didn't. So if we're to look at what her general practices were and apply them to this particular case, acknowledging that deficiency, we can also suspect that if there was, in fact, criminal history in her file, it would have been dated, there would have been some notation on that. She could have easily provided that to the district court during her testimony. She didn't. It suggests to me that that general practice wasn't followed here, much like her other general practices. Well, you're suggesting that the record just reflects she was summary, and we can't draw anything from those conclusions. Yes. I think there's nothing to support that she followed her own general practices. So I think it's actually beyond what you just described, Judge. If her general practice was one thing, the evidence is that she did not follow her general practices in this particular case. Of course, the officer brought the informant to court, right? Sure he did. Not always the case. Right. But what is the importance of that? If he brings it but doesn't give it, he's tendered to the court. He's not hiding the individual, Mr. Ellis. I think it's a bit peculiar. If I know something is bad for my client and I have it in my pocket and I don't disclose it to the court and I only do it once I'm called upon to do it, I don't think that that shows I was very forthcoming to the court. No, but, I mean, he brought the individual who could have been subject, as you say, to greater scrutiny, but he came to court. Certainly. I think he knew the practices of this particular judge in this case, knew that the judge likely would not call him. Do we know that or is that speculation? That's my own speculation, but there's plenty of speculation, I think, that happened in this case about the procedures and things. I understand. All I can say is that there was an opportunity to question, and this I'm basing on the facts of the record, to tender to criminal history. It wasn't done. To call the witness in question wasn't done. Those are the things that we know that should have been done and weren't. I'll reserve the balance of my time. Let's not waste further questions. Thank you. Thank you, Mr. Ellis. Mr. Hsu. Good morning, Your Honors. May it please the Court, Devlin Hsu for the United States. First, to address the Central Franks issue, I think first, the district court did find that that criminal history record, the jacket that was tendered to the state court warrant issuing judge, did contain the informant's criminal history. Well, how do we know that? Didn't she say it's her general practice? It was her general practice to have requested that information. She testified that she would have followed that general practice here, but more importantly, the officer testified that he brought a copy of the John Doe's criminal history with him. He testified that even though it wasn't yet protocol for judges to request this information, he did so because he wanted to be as prepared as he could for anything the judge might ask. That was his testimony at the Franks hearing. That was not impeached on that point. And therefore, acting in a way that would have brought more information than what was actually required of him is certainly inconsistent with an idea that he acted deliberately or recklessly, which is a separate prong of the Franks test. It is the defendant's burden to prove all of the prongs of the Franks test by preponderance of the evidence. It's not simply enough to point to an omission and therefore to say that therefore it must have been a deliberate or reckless omission. And additionally, it was not the case in the record that all was asked of him was just his name. The judge testified that her general practice was to engage in a brief colloquy with these John Doe informants, to ask what their real names were, to ask the basis for their firsthand knowledge, to admonish them about the serious consequences that could result from giving information that would lead somebody's house to be searched. She testified that she followed that practice in this specific instance as well. And additionally, the officer testified that he did bring the John Doe to that judge, again, which in fact militates against any inference of deliberate or reckless omission. Turning to the other ground for reversal that the defendant now argues, which is that the warrant lacked sufficient probable cause to have in the first place. I think first, as we argued in our brief, this is forfeited under Rule 12C. The way that he is raising it now is as an independent ground for reversal, whereas at the Franks hearing and in the motions leading up to the Franks hearing, it was couched as simply how the addition of this information would have impacted probable cause.  again, the defendant's burden to prove every single one of those prongs by preponderance. And therefore, if he didn't meet any one of these prongs, then the district court didn't have to address this probable cause argument, which is the third prong. That's exactly what happened here. The district court properly held the defendant failed to carry his burden at that second step, which is the deliberate and reckless omission, didn't even need to proceed to whether that omitted information when added back in would have been material to finding probable cause. As a result, it cannot be an independent ground of reversal that the district court simply failed to address this argument when the district court had acted properly in failing to address this argument in the first place. Putting that aside, there was sufficient probable cause to have issued that warrant. I mean, when we look to the totality of the circumstances, which is meant to be a common sense, non-technical inquiry, I think we look to the fact that the affidavit was sufficiently detailed regarding what the gun was. It was detailed regarding where in the house the gun was located, which is in fact the location that the gun was found. It was detailed as to the reason why the defendant had that gun for his own personal protection. It was detailed as to the reasons why the informant knew that the defendant was tied to that house. It was detailed as to the reasons why the informant was at that house. It was also very recent in time. 10 days is not at all stale considering the type of contraband that issue here, which is a gun possessed for personal protection and therefore would not have been one that was likely to have disappeared or have been disposed of in that very short period of time. Finally, what the police didn't do in this case does not detract from what actually was done in this case, which was sufficient corroboration and that he drove the John Doe to the crime scene. He showed a photograph that the John Doe identified as the defendant. He also ran the defendant's criminal history, which was an element of the offense. And so if there are no further questions, Your Honor, the government respectfully requests that this court affirm the conviction and affirm the sentence. Thank you. Thank you, Mr. Shoup. Mr. Hillis. The testimony that was given by the individual at the hearing is largely irrelevant. What matters under Frank's is whether the affidavit had a material omission. And it did. Criminal history is nowhere referenced in that affidavit. And it easily could have been. It was known to the officer. The officer chose to withhold it. And he did so for very apparent reasons. It would have detracted from the probable cause that was scant to begin with. And so the officer, the officer chose to omit that. Having made that reckless and deliberate omission, they are subject now to the consequences of the violation. And again, the evidence would have been insufficient in our view without the omitted information. The omitted information further detracts from it. There was the wrong gun that was found showing the individual, the evidence, the picture of the house where it's located and saying, is this the place after you've run the clear check through the database and so forth, the photo array, which consisted of a single photo. That's all highly suggestive evidence. It doesn't do anything to corroborate independently what the informant knew. It simply provided the information for the police officers to take action upon it. That's not appropriate. For all the reasons that we said, we asked this court to give relief. Thank you, Mr. Ellis. Thank you, Mr. Sue.